JUSTICE LEAPHART,
dissenting.
¶70 I dissent from the Court’s resolution of issue 2(a). Having done so, I would not reach issues 2(b) and 2(c).
¶71 First of all, I note that the Court spends considerable time discussing the School District’s written policies; how the policies are internally inconsistent and how the District’s suggested edits violated Policy No. 3222. If the Court were reversing due to the District’s violation of school policy, then the policies and the District’s suggested edits would be relevant. However, the Court’s self-described "narrow holding”is not that the school violated the policies, but that it violated the First Amendment Right of Free Speech. Thus the sole focus of the analysis should be: what was the content of Griffith’s proposed speech, and did the District violate her right of free speech in not allowing her to deliver the speech as proposed?
¶72 Renee Griffith’s proposed valedictory speech contained two references to God and one reference to Christ. She proposed to say that T can say that my regrets are few and far between. I didn’t let fear keep me from sharing Christ and His Joy with those around me.” (Emphasis added.) The Court holds that this was not proselytizing, and that not allowing Griffith to speak was viewpoint discrimination of protected free speech. I disagree.
¶73 Initially, I question whether proselytizing is an accurate litmus test of Establishment Clause violations. Although the Ninth Circuit repeatedly referred to impermissible speech in Cole v. Oroville Union High Sch., 228 F.3d 1092, 1104 (9th Cir. 2000), as proselytizing, the decisions in Lee v. Weisman, 505 U.S. 577, 587-90, 112 S. Ct. 2649, 2655-57 (1992), and Santa Fe Indep. Sch. Dist. v. Doe, 530 U.S. 290, 305-310, 120 S. Ct. 2266, 2276-79 (2002) make clear that the religious involvement need not be proselytizing or even sectarian in order to be *215 considered impermissible under the Establishment Clause. The invocation in Lee was decidedly non-sectarian, as was the prayer in Santa Fe, yet both were found to violate the Establishment Clause. As a legal matter, proselytizing speech will almost certainly trigger Establishment Clause concerns. This does not mean, however, that speech must be proselytizing to be found constitutionally impermissible. Sectarian religious references short of proselytizing may suffice. Nonetheless, assuming arguendo that proselytizing is the proper test, Griffith’s proposed speech tests positive.
¶74 In seeking to \share] Christ and His Joy with those around”her, Griffith was seeking to induce others to join her religious faith. That is, she was proselytizing. Proselytizing speech is speech that “[is], by definition ... designed to reflect, and even convert others to, a particular religious viewpoint ....” Doe v. Santa Fe Indep. Sch. Dist., 168 F.3d 806, 817 (5th Cir. 1999). To proselytize is ‘It]o induce someone to convert to one’s own religious faith.” American Heritage Dictionary 1454 (3rd ed., Houghton 1992). Even if Griffith’s speech is not perceived as proselytizing, it illustrates the impossibility of having school administrators make such arbitrary determinations in the face of the Establishment Clause.
¶75 The critical inquiry under Santa Fe and Lee to determine if religious activity at a major public school event constitutes impermissible coercion to participate is whether “a reasonable dissenter ... could believe that the group exercise signified her own participation or approval of it.” Lee, 505 U.S. at 593, 112 S. Ct. at 2658. The court here reasons that Griffith’s three references to God or Christ were not proselytizing because she prefaced each reference with “I learned” or ‘hay faith;”that she did not once use the term “we” or ‘Vou.” This analysis overlooks that Griffith expressly sought to “share Christ and His Joy with those around her.” ‘Sharing” is not a solitary endeavor. Rather, sharing is to enjoy or experience jointly with another or others. American Heritage Dictionary at 1659. ‘Those around her” were the hundreds of people in the captive audience. They were the “we” and the Nou” the Court overlooks.
¶76 In the present case, the purpose to be served by this gathering was to conduct a graduation ceremony, not to share a sectarian religious experience. The District had a legitimate interest in complying with the Establishment Clause by not lending its imprimatur to expressions of religious belief at the ceremony. Contrary to this Court’s conclusion, it was not Griffith’s religious viewpoint the District sought to exclude, but any sectarian religious content in *216 general.
¶77 Griffith cites a number of cases in support of her free speech claim. These cases, however, are clearly distinguishable from a school sponsored graduation ceremony. Griffith cites Lamb’s Chapel v. Ctr. Moriches Union Free Sch. Dist., 508 U.S. 384, 393, 113 S. Ct. 2141, 2147 (1993), for the proposition that “a school district could not permit school property to be used for the presentation of all views about family issues and child rearing except those dealing with the subject matter from a religious perspective,” and Rosenberger v. Rector & Visitors of the Univ. of Va., 515 U.S. 819, 831, 115 S. Ct. 2510, 2517 (1995), for the proposition that a university could not refuse to fund a student publication because it addressed issues from a religious perspective. Finally, she cites Good News Club v. Milford Cent. Sch., 533 U.S. 98, 107-09, 121 S. Ct. 2093, 2100-01 (2001), for the proposition that “the Court found viewpoint discrimination where a public school permitted nonreligious groups to meet on school property after school but prohibited a Christian club from doing so.”
¶78 The above decisions are all clearly distinguishable. They each involve voluntary participation. When a Christian Club uses school property as a meeting place, no one is required to attend; the public is free to participate or not. Likewise, when school property is used for the discussion of family issues and child rearing, whether from a religious viewpoint or not, no one is compelled to attend. A high school graduation ceremony, however, is an entirely different matter. Unlike after-hours meetings in Good News Club which lacked the imprimatur of the school, the “essence of graduation is to place the school’s imprimatur on the ceremony-including the student speakers that the school selected.” Lassonde v. Pleasanton Unified Sch. Dist., 320 F.3d 979, 985 (9th Cir. 2003), cert. denied, 540 U.S. 817, 124 S. Ct. 78 (2003). High school graduation is one of life’s more significant events. Attendance at high school graduation is compulsory. The speakers chosen by the school clearly have a “captive” audience. The student body of a public school is presumably very diverse with a mix of Christians, Jews, Muslims, atheists, and agnostics, many of whom would resent being required to attend a ceremony in which Christ and His Joy was being shared with those present in the captive audience. As the Court acknowledged in Lee, our society recognizes that even simply standing or remaining silent can signify adherence to the views of others. Lee, 505 U.S. at 593, 112 S. Ct. at 2658. Accordingly, a reasonable dissenter could certainly feel that his/her silence signified approval or participation in this public sharing of Christ and His Joy.
*217 ¶79 The Court here reasons that the school, through a disclaimer in the graduation program, made it clear that it was not sponsoring the speech. The disclaimer, although it may have alleviated concerns of school “sponsorship” or “entanglement,” does not address the coercive effect on dissenters. In Lee, the Court held that a school district violated the Establishment Clause when it invited a rabbi to deliver a nonsectarian, nonproselytizing prayer at its graduation ceremony. The Court noted the singular importance of a high school graduation as a once-in-a-lifetime event and the susceptibility of adolescents to peer and social pressure. This left a dissenting student with the unduly coercive dilemma of participating in the prayer against her conscience or missing her own high school graduation. Because this dilemma gave the dissenting students no legitimate alternative to attending their graduation, the Court concluded the school district had in effect compelled participation in an explicit religious exercise. Id. at 593-94, 112 S. Ct. at 2658-59. The dissenting students in Griffith’s class were in the same untenable dilemma. They were part of a captive audience and had to choose between attending the ceremony and turning the other way when the speaker sought to “share Christ and His Joy” or not attending their high school graduation.
¶80 Although Griffith’s speech was not as blatant in its proselytizing as the speech the Court uses for contrast from Cole, it graphically illustrates the impracticality of having school administrators walk this Constitutional tightrope. What if three of four valedictorians made personal references to Christ or one speaker made five references to Christ? What if a speaker used ten references to “sharing the joy of Allah,” would that be free speech or proselytizing? The question is answered in the asking. The line drawing will necessarily be subjective depending upon the administrator. The point being that school districts have a constitutional obligation to avoid violating the Establishment Clause. Santa Fe, 530 U.S. at 301-02, 120 S. Ct. at 2275. In honoring that obligation, school districts are entitled to a degree of latitude. The proper test is not whether the speech in question would be constitutionally permissible; rather, it is whether the District “acted reasonably to avoid violating the Establishment Clause.” Cole, 228 F.3d at 1105. There is “no doubt that compliance with the Establishment Clause is a state interest sufficiently compelling to justify content-based restrictions on speech.” Capitol Square Review & Advisory Bd. v. Pinette, 515 U.S. 753, 761-62, 115 S. Ct. 2440, 2446 (1995). Here the District was not engaging in viewpoint discrimination. In demanding that there be no sectarian religious references, it was *218 properly imposing content-based restrictions. It had no other means of preventing the coerced participation in this “sharing” of a sectarian religious experience. See Lassonde, 320 F.3d at 984. The Butte School District did not act unreasonably.
¶81 I would affirm the decision of the District Court.